May it please the court, Jacqueline Zalgado on behalf of Mr. Jimmy Pierre. One of the, what we're going to concentrate most on during oral arguments is going to be the CIMT charge. The statute here where the petitioner was convicted is just a glorified simple battery statute. The statute describes four instances in the way a child can be battered upon by doing that instance in five different ways. One of the issues is the statute at this point is divisive how it is written according to the wording of this statute. The most important thing is that the statute has an attempt in it, the word of attempt in the statute which automatically pulls it out of the CIMT as it's written in the statute. Most criminal statutes that have an attempted element it would be a completely different section of the same statute but here the word attempt is written directly in to the wording of the allegations that the prosecution or the conviction held. I understood that under Florida law an attempt requires an attempt. The attempt statute here is there he doesn't even have to have an act according to that statute it just needs to be attempted so if you are planning on doing something that is not sufficient according to the... You couldn't be accused of violating the statute through attempt without some act. I would argue that you can't be convicted of it even though it's in the statute that leaves it very vague and ambiguous as to whether Mr. Pierre ever acted in any way to commit a battery on a child. I mean generally... So doesn't Thomas V State say that you have to have a specific intent to commit a crime and an overt act? Yes and here there is no over... According to this the way the statute is written with the word attempt there is no overt act if you just attempt to do something. But in that case they were construing the statute weren't they? Yes they were but when we construe the statute here the petitioner was convicted of not attempting to do something a separate act or a separate statute. In this case the word attempt is actually in the plain meaning of the statute which takes it outside of that over action needed. Even though it is no unknowingly caused or attempt to cause but there is no overt action when you attempt to cause something. And further the contact that is necessary for this statute is not a contact that uses deadly weapon or serious injury which traditionally the courts have found to be a CIMT. Give me an example of attempt to cause where there wouldn't be conduct or an action. I don't know how you attempt to cause if you don't do something. Exactly but here you there... I could ask you to go do this act. But if I never do it then I never attempted it which is which is kind of what the argument is that an attempt to do something shouldn't be held as a CIMT when there was never anything done. And that's and and it's including the fact that there are the statute doesn't even have... When you mean by never having anything done you mean because the child never came in contact with anything. The child you just attempted to have the child come in contact with it. Correct. And and the attempt was unsuccessful. Correct or exact that could be one example whether the attempt was is unsuccessful then that's something else but if he never even if he the attempt was not successful is fine but the point is that nothing according to this statute him attempting is a battery which is not the way that battery has traditionally been defined which is touching against one's will and here there doesn't even have to be that contact and that contact can be so slight or there should there is never that contact and the CIMT traditionally cause especially when it's with a child which we understand is somebody that society tends to protect usually there is an element of serious injury or deadly weapon and this is not none of these none of those two elements are classified or outline in this statute. About his asylum attempt he entered the United States as an asylee initially but he never sought asylum he never applied for it. So the underlining record shows that the attorney never actually filed asylum as a defense to removability or so therefore he never actually applied for it again but he adjusted as an asylee through his father so that goes to the arguments that were made as to the motion to continue arguments where it is the opinion of okay so he had asylee status he did and he adjusted he entered as an asylee and he adjusted to a legal permanent resident as an asylee. Okay but that doesn't stop him from being removable right? Well unless he has the seven years and no act of no moral turpitude right? That's yes that's correct but he could he at some point the argument was made that if the application had if the motion to preterm it by the government would have been filed timely then respondent would have had sufficient time to at that point file an asylum application if he is taken outside if he is no longer a green card holder so it he had he suffered prejudice in that attempt in that instance when the government filed on April 30th a motion to preterm it and the hearing was on May 4th at that point the judge had given everybody a call update and counts underlying counsel did file a 42a application which was pretermitted but he but at some point he probably should have filed the asylum and that's that's the third argument in our brief that he should have that we should have been respondents should have been given the opportunity because of the prejudice against him that suffered by the late filing on DHS is a court so tell me where he where what would happen he applies for asylum correct and then how does that affect the proceeding that he's in so he could a file he could have applied for asylum withholding or or cat so at that point he would have been able to present evidence as to us an asylum application and had a complete hearing on the asylum application that he was a derivative from on behalf of his father okay so the derivative asylum puts him in a different position than getting asylum on his well no it just shows that he had he could possibly have a claim for asylum on his own that's all it shows it doesn't put him in a different position it just shows that he can and he should have had they been aware of the DHS memo to preterm it that was filed untimely then he would have filed for an asylum withholding or cat couldn't he have done that in the last couple of years yeah but DHS could have also filed their motion to preterm in the last couple of years which is where we he was never even put on notice that this statue that they were going to pursue this as a CIMT because he's not charged with the CIMT in the NTA the only thing that he's is um the child abuse claim all right what is an i-589 well the i-589 is the asylum application okay i just want to make sure yeah so um the what would the suppose they hadn't filed the motion to preterm it what the what would the district judge or the ij have done um he would have it depends on the judge the judge is judge mateo so he could have had a full immigration a full-blown hearing and at that point made a decision uh whether it was a CIMT or not but the CIMT issue was never even brought up until um the until the motion to preterm it because it was only they the government withdrew the two CIMT charges okay but the grounds for asylum if if he were to file one um had existed at all times anyway understand he said well i didn't know about this so i i didn't want to file it it was only a backup idea but if you're seeking asylum the basis for the asylum existed from the beginning of the removal proceedings that's that's correct it did so when they filed the NTA they started the whole thing he had grounds for asylum correct then okay and he never filed it but the event in any time and even after the ruling here he never filed one that's correct but the the the opportunity was it while it was presented him to him throughout he the the under the attorney made it clear that the 42-8 was the strongest case and um on the record at page 121 alternative claims are made all the time right and particularly here this there was no new development of facts if the asylum claim was there it was there before what what would his asylum claim have been it was it would have based probably based on family particular social group of the father in haiti in haiti correct right and and he would have fear of returning but he was already a green card because of what the social group of the father was what and what's going to happen well the the particular social group of the father i've never actually seen the application but it would probably be as a family member of the father so the asylum claim would have been derivative it would have been a particular social it would he would have been it wouldn't have been derivative because it would be his own asylum claiming that because he was the family of but at this point we're speculating because he never filed it but that would have been has he ever proffered what the asylum claim is going to be at any time here not at the record not on the record no right but it was indicated that the father did gain asylum in haiti and that's how he was brought to the united states the father obtained asylum in the united states based on the situation in haiti whatever that would have been okay okay i see my time is up so i'll yield my thank you thank you you'll keep your rebuttal of five miss corliss good morning lindsey corliss for the respondent we ask that the court deny the petition for review and uphold the board's decision below it's undisputed in this case the petitioner was convicted of violating florida statute 784 085 which prescribes knowingly throwing expelling projecting or tossing blood urine feces or seminal fluid at a child there are three disputed issues in this case or attempting to cause it's um the attempt is actually attempting to cause the child to come in contact but the overt act is by throwing projecting expelling um tossing so the defendant must actually direct these fluids these bodily fluids at the child and then but and they must do so with at least the intent of having the child come and come into contact with those substances but the attempt part is if he were he were to throw feces and miss the child then that would be an attempt that would fall under the statute but the overt act of the actual throwing projecting directing can i ask about the hearing um yes well what was the notice to um uh mr pierre for the hearing what did it tell him was going to happen at the hearing anything specific the original notice to appear or to well in the original notice to appear it all together what information did he have from whatever notices he was given before the hearing okay so he originally in july of 2012 was given a he was informed of the charges against him and what did they say um at that time it was um two crimes involving moral turpitude that was a client that was a charge that was that was ultimately withdrawn and also that he was removable as an alien convicted of a crime of child abuse neglect or abandonment okay so they charged the notice said moral turpitude and the uh child neglect charge yes um petitioner um thereafter obtained counsel and um he subsequently was given um there were multiple continuances of this case while he was represented by counsel on august 7th 2012 august 14th 2012 september 13th 2012 and and then finally on april 25th 2013 that was the that was probably the most relevant to the to our discussion here on that date his attorney stated that they were planning on filing cancellation of removal and likely an asylum application the immigration judge asked how much time would be necessary for them to to compose those applications and file them and petitioner's attorney at that time said that he would need about a month the immigration judge informed petitioner that he didn't have a hearing date that close in time so he actually sent it out a year and stated you have a year on your case and again he confirmed with the petitioner's counsel he stated all applications including an asylum application would be due on the same date petitioner's counsel at that his cancellation of removal application had not filed an asylum application i also think it's important to mention that petitioner didn't walk into court and say i have this evidence that i need to to file in order to support my application he actually waited until the the immigration judge had already pre-termitted his cancellation of removal application ordered him removed and then he said i didn't think i needed to file a backup application and then he to to for a continuance in order to do so the immigration judge is not required to go through in in in applicants uh separate applications um in separate hearings um it's uh part of the regulations are that the immigration judge is allowed to set deadlines and and generally a petitioner is entitled to one merits hearing on all of those applications did the immigration judge's order at that time preclude him from taking any other actions on um on asylum i mean does the order itself preclude that um well no not specifically he was certainly at least for the cancellation of removal application he could have filed um a motion to a motion to reconsider um if there were a different legal argument that he wanted to present regarding the crime asylum or is he or does the immigration judge's order cut that off if he he would have to establish a reason for instance he could have filed um a motion to reopen alleging ineffective assistance of counsel first for instance um stating that that the reason why his application is being filed late and he needs his proceedings open just because he received ineffective assistance um so he certainly could have done that at that point um through the motion to reopen um i don't know what the circumstances of his case were he could have um potentially um and i'm just speculating uh filed a motion to reopen alleging um changed country conditions in haiti that that now give him um a an opportunity to apply for asylum does this past status as an asylee give him any special status it doesn't um for a couple of reasons um well first uh so petitioner at this point it would only be eligible for withholding of removal or cap protection um based on a disqualifying conviction the the the um crime involving moral turpitude and and um and the crime uh of child abuse neglect or abandonment additionally petitioner we can't say that he is prima facie eligible he came in as a derivative which mean that means that he never established that he faced a personal risk um um so if he uh if he had had established previously that um that he himself was going to actually face persecution then perhaps his case might have been a little stronger um but here all we know is that his father um established that he had a well-founded fear and so he was able to bring his minor children in as derivatives so we don't know if petitioner himself would have had had you know any sort of reason to fear a personal risk back to overt act in this particular statue do you have any florida cases you cite with regard to construing this statue um we don't this that's actually a statute that is not um used that much not we couldn't find anything on the statue is there that was pretty much the only the only cases that that we were able to to find were cases where petitioner was charged for multiple crimes including like gluten lascivious conduct on a on a on a young person um and then and and the uh that charge wasn't um discussed the it wasn't analyzed to a point where you can um discuss an um the other thing um that i i wanted to mention is is that that um even if all this person was doing was attempting it still constitutes both maltreatment of a child and reprehensible conduct um if you can compare this case to say um jelen g-e-l-e-n versus u.s attorney general that is a and this court has found that that is a crime involving moral turpitude um the specific statute that that case was analyzing um uh criminalized um the knowing active encouragement of another person to commit an act that that either results in in injury or could reasonably result in injury to an elderly person or a disabled person um uh without causing serious bodily injury and and the way that the court had defined defined um the injury that could possibly be called uh caused includes psychological injury and this court has found that that that elder abuse statute was a categorical crime involving moral turpitude because you have this act which is morally reprehensible and it's and it's being perpetrated upon a group of people that is particularly vulnerable in society that being the elderly or or disabled adults if you care that if you compare that to this case we have an even stronger act because it's the defendant himself throwing expelling tossing these substances at a child rather than just encouraging another person to act what is your best case under florida law that attempt always requires an overt act um i understand she's saying this statute has the attempt within the terms of the statute as opposed to a separate statute that says attempt to do any particular act is also a crime right um i got her point on that but let's look within this statute um just attempt law generally under florida right attempt generally and i know we we did cite this in in our brief and i and it is just i think she tries to me that the name of the case construes the stature in a way that it doesn't have right um florida has has decided that any attempt does require an overt act yeah the ij cites one he cites carlton v state that is one that we have okay that's a dca yes 2012 case but i just wondered if you had anything else off the top of your head no that was the case that we had relied upon okay okay um if there's no more questions on this topic perhaps i'll back up a little bit and just make sure that i address the three main issues here um the first being that petitioner's uh conviction does constitute a categorical crime of child abuse neglect or abandonment now this court has not um in a published decision officially deferred to the board's definition of that of that term but this court has uh afforded chevron deference to the board's interpretation of the term in an unpublished case martinez and it should continue to do so in this case because the board's definition is the term as any offense involving the intentional um with knowledge recklessness or criminal negligence act or omission that constitutes maltreatment of a child or that impairs a child's physical or mental well-being including sexual exploitation or sexual abuse um and in finding that definition the board synthesized many different criminal statutes available at the time including seven different federal statutes uh that defined um that that defined the term child abuse and uh and synthesize that with what the general understanding of the term was at the time that congress enacted the the ina um and so that's how they determined this broad definition and all of the the and and the board further refined that definition in matter of sorum just to state that child abuse also includes um uh convictions that don't require actual injury to a child so long as that there's sufficient proof that in say an endangerment statute that that they're that they're that the harm was likely to to arise from the defendant's actions now here we have a case where the the statute of conviction matches those elements um first it has adequate mens rea the knowingly second the statute requires an act that does constitute maltreatment of a child whether you whether you throw you know these fluid uh you know bodily fluids at a child and miss or hit him um either way this is going to cause a mental injury to a child who instinctively will know that an adult throwing feces at him is is doing something that is that is contrary to the accepted morals in our society um and finally it involves the child victim the statute requires that the victim always be under age 18 and that the defendant always be over 18 um moving quickly to the the um to the crime involving moral turpitude holding um petitioner's statute of conviction does uh constitute a categorical crime involving moral turpitude crimes involving moral our crimes have involved both reprehensible conduct and some degree of scienter now here the scienter is knowing so that that qualification has been met um and second as i stated all of the conduct that is possible on your here whether it's an attempt to to cause the child to actually come into contact with these substances that the that this person directed at them or whether whether they actually did did make contact it's going to be vile base and depraved conduct now while there's been a comparison to assault and battery statutes we're ignoring the very clear aggravating factors that bring this above an assault or battery statute the first and most important being that the victim is always going to be a child now congress has specifically stated that and an assault on a child is more likely to be a crime involving moral turpitude second in a simple battery statute you have an unwanted touching there's a difference between a touch with a hand and and having a you know a bodily fluid essentially weaponized and thrown or projected or spelled at you um this court has found that in in uh in young versus a u.s attorney general that this exact statute um involves violent force enough to trigger a sentence enhancement so we do have some sort of force behind that touch it's not just an unwanted touch um and i do see that my time is running out um so i will just conclude by asking that this court deny the start with the statue she says the overt act is the attempt to cause and what the person is by tossing perjailing the overt act that that statue requires that you toss project or whatever he says and and therein by that act um attempt to cause harm no attempt to cause contact why is that not a legitimate reading of the statute well it's not because again we're we're the attempt to cause a child to come into contact there doesn't even need to be contact and i agree okay all right but with you but it's attempt to cause the child to come in contact with these fluids by someone so it seems like the defendant has to do the by tossing sewing so tempting he could either cause contact or attempt to cause are you following what i'm saying that's a toss but that is that toss is at the end of the statute so i don't what attempt to cause them by you could say by shooting a gun um but here it says attempt to cause somebody to come in contact with these things by it could say by yeah i mean also the we can use the word tossing which is not a violent word and and it shouldn't be used to enhance this statute because we all the time we say let's go out and toss the ball and we're not going to hit ourselves with the ball we're tossing the ball which is something that is non-violent council focus on the the attempt what what what i hear the government saying is that the throwing tossing projecting or expelling is the overt act and that the attempt is you have to have thrown tossed project or expelled in order to be convicted just from the face of the statute that's what i heard the argument is can you respond to that and and my response is that when this statute the plain reading of this statute has attempt to cause a to throw toss or project but that's not what this the word attempt is qualifying that's the argument that we're making that the only attempt to the attempt is controlling actually contact and the contact is not described as contact that is violent or causes injury while we agree with opposing counsel that traditionally the statutes have held i mean courts have held that a person such as children or domestic partners can have a heightened standard but this statute leaves no does not define anything such as a deadly weapon or any injury just as counsel's argument i'm sorry arguing that you have to attempt to throw not that you actually have to throw i i'm arguing that the that there the statute doesn't there doesn't need to be contact and once the statute requires that no contact needs to happen then you you don't have an injury that could cause harm you don't have an injury and you don't have um an action that could be an attempt that could eventually lead to injury also as in counsel stated in jelen once you don't have that contact there is nothing there is no violation of that there's no cimt because there is no qualification of that contact and traditionally while children are to be protected there the statutes always call for um a deadly weapon or in or serious injury on the child all the cases stated cited in the brief by counsel um differentiate this statute garcia was a child a sexual abuse case so so was a case that required permanent disability permanent disfigurement or i don't think any of those cases cite this statute they don't but they just analyze another statute right correct and and that's why the these other cases some of them were found to be cimts because of that qualification of the contact here we just have contact or an attempted contact and that i believe is the difference and we can use that to differentiate and show that there is what you're saying is you could um throw say urine at a child but as long as it doesn't have contact and you would be guilty of defense you missed right you missed that because it's an attempt situation that's different than actually if you actually make contact i i believe that that is what makes the statute divisible okay i don't think the statute is divisible i think the statute is not divisible so you have to look at the least of the offenses which is attempt okay so if the statute is not divisible i mean i'm just speaking for myself uh i just said it's not divisible i think that's correct so you have to look at the attempt as the least of the offenses correct and then if you even though that's not what happened here there was actual contact with the fluid but we don't look at the facts of the crime right and and i i agree with i mean it was sexual intercourse we all know that we got i mean that's what it was so there was contact i agree but that's not that we looked at the statute to see what the least criminal conduct under which you could be convicted and that's and that attempt is the main problem thank you thank you your honor the next case of the morning